This case, in terms of the briefs, is filed under SEAL. There has been no request or motion filed with the court for sealing the argument. In our view, you can proceed with reference to a generic defendant, but I really think it's a legal issue, so I don't know that we would need to get into any further detail on that. I don't see any matters that would be considered sealed. That's fine, Your Honor. I have no intention of referring to the defendant by name. I did just want to make sure that the court had no objection to be referring to the facts, which are also under SEAL, but I will be referring to those. Well, that's not in a specific way tied to this defendant, but in a generic way as it relates to legal issues. Well, the court didn't put this under SEAL itself. I mean, it arrived here. No, that's correct. The parties put it under SEAL, so I think that the briefs actually have a very thin amount of what I'll call facts because most of it is focused on the repudiation question. So to the extent you can minimize any effort to extend beyond the sealing of the briefs, I think that would be appropriate because I don't want to find ourselves in a dispute between the U.S. Attorney and the Defendant's Counsel. Yes, and our concern is just that we not be deemed to be violating the district court's order, which in fact placed everything under SEAL. Correct. So with that as the understanding, I'm perfectly prepared to proceed on those ground rules. Great. I would like to reserve three minutes for rebuttal if I could. All right. So somewhat interestingly, given the last case that was argued, here, too, we face a situation where the real issue before the Court and the primary issue before the Court is whether an agreement can be applied as it was drafted, and as I believe it was clearly intended, or whether this Court's prior decision in Savage means that the agreement is basically rendered void in its entirety simply because the Defendant elected to, in essence, breach the agreement by not going forward with their plea. Well, what was the breach? What was the breach? The breach was her unilateral decision not to proceed with a guilty plea. Okay. Not to appear in court and tender her guilty plea. And the guilty plea does – I mean, that's the – it seems to me that Savage may have in other circumstances where the breach is something else. But where the breach is not tendering the plea, that seems to be precisely what Savage is about, no? Well, I think what Savage would say and what the other cases would say is we cannot force the Defendant to appear and enter her guilty plea. Right. And have the Court go forward. There can't be specific performance. But what Savage and the other cases don't say, very particularly, is they don't say there can't be other contractually agreed remedies if the Defendant doesn't appear. And in particular, what I'd like to draw the Court's attention to and why I think this is the proper way to read Savage is to look at a case that Savage itself relied on, which was Papaleo out of the First Circuit. And Papaleo faced a similar situation in which a Defendant sought to enforce against the Government. And what the Court talked about there was we must determine whether the agreement is an exchange of promises or an offer by the Government for a unilateral contract, an offer which the Government could withdraw any time before the Defendant started to perform by pleading guilty. And what the Court in Papaleo looked to was whether there were things in the contract that indicated that it was a more explicit exchange of promises. And in particular, in Papaleo, the language was, quote, absent more explicit promissory language. We will not read the ambiguous language of the agreement as containing bilateral promises such as to bind the Government to a contract unenforceable against the other party. Now here, of course, in our agreement, it is distinctly different from what we had in Savage. In Savage, it's not even clear that there was a signed written agreement. If you look at the facts, it appears that there was some kind of agreement. It's not clear what it was. Here we have explicit mutual promissory language. In the plea agreement that is signed, both the Defendant and the Government agree to do certain things. Plus, there are specific paragraphs in the agreement that make clear an intent of the parties that that contract have effect before the Defendant actually appears to enter their plea. In particular, paragraph 28 specifies that the agreement is effective on its signature. Paragraph 22 contemplates a breach at any time between execution and the completion of certain other events, suggesting that the operative time is execution. And paragraph 23 says a breach will toll the statute of limitations for certain conduct that the Government agreed not to charge between the date of the Defendant's signing and some other later time. So, again, there are explicit indications that it's supposed to be effective at the time of signature, which takes us outside of the cases that Savage relied on, where it would be. Here's really the question I have, though, is you have to look at this agreement in the context of the overall or an overall criminal proceeding. And we've now clarified, I think, with the help of the Supreme Court, the difference between the plea and the plea agreement. And so if you can withdraw your plea at any time, I mean, if you can withdraw for any reason before the plea is accepted under Rule 11, I'm having trouble understanding why your approach doesn't really eviscerate any practical meaning for Rule 11. Because you'd get in, you'd have plea negotiations, you'd enter into the agreement, but in effect, your position would force the Defendant to say, well, I could withdraw but not really. Well, no, no, really, they can. They're not going forward and entering their plea. There is no specific performance. But the contract imposes a condition on that. It imposes a detriment to the Defendant if they make that election. There's nothing in Hyde that precludes that. And, indeed, I would suggest that Hyde, which came after Savage, in fact, suggests another problem with Savage. Because if you read Hyde as it talks about plea agreements, it clearly severs plea agreements and the entry of the plea. More importantly, it talks about the provisions of Rule 11 that deal with acceptance, rejection, withdrawal, and talks about those provisions. And in that context, it specifically contemplates a plea agreement even before it's accepted by the Court as imposing binding contractual obligations. And the language in Hyde that says that is basically talking about the fact that the government's performance obligations can be only triggered subsequent to the Defendant's signing of their mutual promises, the government's obligations to perform, i.e., to dismiss counsel or to make sentencing recommendations, obviously can't be triggered until after the plea has entered and accepted. Kagan. But there may be others. For example, in the Young case, although it was portrayed in the briefs as if it completely supported your position, in fact, what it says is that the affidavits were the quid pro quo for the bond, which was prior to the plea agreement. So there you have a consideration for the waiver which is independent of the plea. But here there is no consideration independent of the plea, and the plea as a matter of law doesn't become operable until made in court and approved by the court. So isn't that just an implicit term of the agreement? And you could have – I accept your position to the degree that the fact that this is called a plea agreement doesn't mean that it couldn't have provisions in it which are operable short of the plea agreement. But here it's the plea agreement breach that you're claiming is the breach, not something else, and there doesn't seem to be anything that would be consideration for this agreement, for this waiver that doesn't – that goes into effect before the plea agreement. The plea, I'm sorry. I'd like to give two answers to that, if I may. The first is based on Hyde. It is true that the government's obligations in this case, in other words, the consideration that the defendant received for all of the defendant's promises as to what the defendant was going to do, all of the government's reciprocal promises, all of our obligations could take effect with one exception that I'll discuss in a moment. Practically, they would have only, in this case, given the facts, only would have taken effect after the defendant appeared and her plea was accepted. But first, Hyde – And that's an inherently – that's an inherently contingent event. That is. But – but – and this is important – Hyde recognizes that and recognizes that that doesn't render the defendant's obligations nonbinding. The language in Hyde that I'm pointing to is – is particularly where they are talking about this. If the court rejects the government's promised performance, then the agreement is terminated. And before this, they've talked about the defendant's promised performance as well. The defendant has a right to back out of his promised performance, the guilty plea, just as a binding contractual duty may be extended by the – extinguished by the nonoccurrence of a condition subsequent. So what Hyde contemplates – and this is its application of contract law, even under Rule 11 – is that there can be binding contractual obligations that are nevertheless dependent on the occurrence of a condition subsequent. That is, the entry and acceptance of the guilty plea. But don't you lose if that's the case? No. We don't. Because in this case, there are also promises by the defendant that are not conditioned on a condition subsequent. All right. Well, that's what I'm trying to understand. What are those? The promises by the defendant, there are a number of promises that aren't conditioned on a condition subsequent. If you look at the promises that the defendant makes, there are a number that are not contingent on entry of a guilty plea. One is appearing as ordered for all court appearances. Under the defendant's theory, even if the defendant in this case had done as the defendant in Savage did, which is not appear or flee, that could not constitute a breach because – because – simply because the defendant had not entered their plea. But that's what the breach are depending on. That's true. But what I'm arguing is that the breach here is not the fact that the court didn't accept the plea. Obviously, the fact that if the defendant had appeared, attempted to enter her guilty plea, and the court had rejected it, that could not be a breach. The defendant would have performed by appearing to tender her guilty plea, and the court's rejection of that guilty plea would have necessarily voided the agreement. The breach here is that the defendant unilaterally elected not even to appear and tender her plea as promised under the agreement. So just to be clear, though, so the rule – so it ought to say, by entry into this agreement, you are waiving any rights you might have under Rule 11. Which it does say in the breach provision as to the use of the statements. It doesn't say you're not waiving your rights under Rule 11 to appear and have the appropriate colloquy conducted. The court still has to go through the process. When the defendant appears and tenders their guilty plea, the court would still go through the Rule 11 colloquy to determine whether to accept that plea. The defendant is not giving up any of those rights. If the court, after conducting that colloquy, determined that whether for public policy reasons or because it determined that the plea, the offer of the plea was not knowing and voluntary, the court could at that point say, I'm not taking the plea. That would not constitute a breach of this agreement. But that's a little different. Let me ask it a different way just to make sure I understand it. Where in the agreement does it say, in your view, that if you don't go forward and plead guilty, that your statements will be able to be used? Paragraph 22D. Paragraph 22D defines a breach of the agreement as being a failure to comply with any of the defendant's obligations under this agreement. That ties back to the definition of her obligations, which is in paragraph 15. Paragraph 15A makes one of her obligations to, quote, plead guilty as set forth in this agreement, as well as other things that clearly don't require the entry of a guilty plea.   He can't be convicted, for example, of plotting wrongdoing regularly. For example, appearing as ordered for all court appearances, which is in 15 C, obeying the conditions of bond, which is in 15C, not committing any crime, which is in 15 B. But isn't the problem? It's an interesting argument, but savage and its progeny seem to see the back out, the contingent, the inherent back out, right as broader than you're suggesting.  committing any crimes. both the government and the defendant can not go forward with their obligation to show up and make the proffer to the court. Actually, I don't think that's true. If you look carefully at all the progeny in the ninth circuit in particular from savage, you see a distinctly different type of set of cases. We have Fagan, in which the issue was the court had accepted a guilty plea that required the government to then present a guilty plea to another court. The government didn't and the court held it was bound by the first agreement. I don't think that has any application here. We have Washman where a defendant. But what Savage says, and it may be a strange role, but it seems to be the wrong, is that it doesn't say that you're not bound if you show up and it's not approved. It says because of the approval condition, neither party is just, this is quoted from the fifth circuit opinion. Neither party is justified in relying substantially on the bargain until the trial court approves it. We are therefore reluctant to bind them to the agreement until that time. As a general rule, then, we think that either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court with the detrimental lines exception. So they seem to have reason from the ability of the district court to reject the plea if it made to the larger proposition that at least, and I would limit it to, at least insofar as we're talking about the plea itself and not some other requirement of the plea agreement, it can go into effect. It can be, the plea can, is inherently contingent, even at happening. I understand what Your Honor is saying, and I would point again, I think the specific language in these cases is important. In O'Connor's, another part that Savage quoted was the line, O'Connor's, which is the fifth circuit case that Savage cites that I think you were reading from. The other part of the language in that case is, quote, surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea, which ties back to Papaleo, the first circuit case that Savage also cites, which points to the absence in the plea agreement of any explicit mutual promises. This is not that case. Here, there were explicit promises. There were explicit mutual promises that indicate an intent on the part of both parties for this agreement to be binding as of the date it was signed and for certain things in that, understanding that, you know, the agreements as to what's going to happen after the plea is entered and whether the court is going to accept it can't take effect until the court accepts the plea. But there were things in the agreement that were specifically contemplating as having effect before that. And I don't think any of the prior cases preclude enforcement of those provisions. And there are very early cases. Let me ask you the agreement itself, because if we take your argument that really treat it like a contract, treat it as an obligation, and then I look at the breach provision, maybe you can illuminate this. It says, if the U.S. Attorney declares the agreement breached and the court finds a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea and the U.S. Attorney will be released on bail.  Attorney will be relieved of all of its obligations, including, and then the ones we've talked about, including D. If you read that language purely as contract language, it seems to me that this breach provision really is predicated on a situation where you have the defendant in there wanting to withdraw his or her guilty plea. Why is it read that way? Well, I think, I'll answer that again two ways. One is I don't think it needs to be read that way. I think it was clearly drafted so it could apply post-plea, in which case it would mean that the plea stands, but the government gets to withdraw all its obligations. On the other hand, if it is applied pre-plea, as the agreement clearly contemplates that a breach can occur pre-plea, then the part about the plea standing obviously doesn't apply, but the government should still be relieved of all its obligations. Now, the secondary answer I'm going to give is if the issue is one simply of drafting and the court concludes that, okay, if this were drafted properly, this could apply, I think it would be important to say that, because the position that the defense is taking is that regardless of how this is drafted, regardless of how the plea agreement is drafted, it is simply without meaning until the defendant appears and their plea  is accepted.  And the other thing I'm going to say is that, as I understand it, the cooperation clause, as I understand it, doesn't kick in only at the time of the plea. It kicked in immediately. Correct. And you could have gone up to her, as I understand it, the next day and said, okay, start cooperating. I think that's true. All right. And if she had refused, she would have breached the agreement. Correct. Right. And it would have had nothing to do with refusing to make the plea and we would  No, but under the position the defense is taking here ---- Well, that may be, but that may be. And the other thing I think, in my view of it, is narrower than that. It's because the breach that you're depending on is the plea that you have the problem. If the breach you were depending on was something else. In other words, I'm not ---- it seems to me this agreement does have some life as soon as it's signed, but not with respect to any obligation to go through with the plea. If the Court is going to take that position, then I think basically it should go as far as we are asking it to go. For this reason, again, we are not seeking specific performance of the plea agreement. We're not seeking for the Court to order that the defendant has to appear in court and enter their plea. But you are seeking a relief for a breach where the breach is the refusal to plea. The breach is the refusal to appear and enter the plea. That's something else. But I think if you think about it on a policy basis, in other words, if we accept the fact that Savage does not operate to preclude the application of promises in a plea agreement. Kagan. The agreement doesn't go poof. It depends on what the agreement says. Right. If you accept that, then why should there not be the ability of a defendant to agree to a condition that will place a penalty on her subsequent election not to go forward? This gets back to the issue in Mazzanato and in Hyde. Well, at a minimum, at a minimum, it would have to be expressed, and it isn't. And as Judge McKeown suggests, if anything, it's the opposite of expressive. The all implications are that the understanding was that this kicked in after the plea was accepted. Well, I disagree with that, obviously, for the reasons I've argued. I understand Judge McKeown's point about 22d. And clearly, we could have drafted it differently. It could have perhaps been clearer. But I think if you read the plea agreement as a whole, it is absolutely clear that all of the obligations are intended to apply as of the date of signature, including the obligation to enter the plea. And if that doesn't apply, it is a breach which is intended to relieve the government of its obligations. So respectfully, I think this is drafted that way. I have another question maybe you can help on. And that is, in the briefing, one of the policy and legal arguments made on both sides was, well, this isn't a proffer. The situation in which these statements were made were in connection with the plea negotiations. So we have two different things. And I think the government said to some point, well, if you take the defendant's position, you kind of force us not to be able to get the statements in the ordinary course of the plea negotiations and discussions, but to have some separate proffer situation. I think it would be helpful if you could explain why that would be, in your view, a burden or would be somehow at odds with procedures that are already going on where sometimes they get a proffer and sometimes they don't. In the situation in a plea, obviously, the consideration for the cooperation, in other words, in an ordinary proffer agreement, the consideration for the cooperation is a preliminary agreement basically to negotiate. The defense will come in, make some statements in return for a government agreement that's limited use, and that will then form the basis. The only consideration is, look, we'll consider those. And depending on what happens, we'll make a decision as to how to proceed with plea negotiations. And those are up and running. Up and running all the time. You know, all better off. You talk. We get to use. I mean, the problem here is really a, in essence, a Rule 11 problem. When a cooperation agreement is part of a plea agreement, the cooperation is not just consideration for negotiation. It is, in fact, part of the consideration for. No, but here's the problem. This is, in fact, here, and this is where the sort of policy problems come in. Because you didn't, as I understand it, have a separate proffer agreement, at the time you were talking to them and got the information that related to, that ended up in the plea agreement, the information that now you want to use and they don't want you to use. But this is at the end of the discussion, not at the beginning. Correct. Right? So you now want to view this as if it were a waiver at the time the disclosures were made, but it wasn't a waiver at the time. At least we have no indication it was a waiver at the time the disclosures were made. And that's why there's sort of a, you know, a catch-22 problem here, which is that they may well have entered into these negotiations without that warning and without agreeing that that information could be used at the time they gave it to you. Although, I mean, again, if you look at the plea agreement, there was a waiver. There's a conditional waiver of the application of Rules 410 and 11. But, in fact, you're not at the beginning. The difference between this and the proffer agreements is that you could have entered into a separate proffer agreement. You probably could have entered it into you could have made it all in one document, but you didn't do that. But the question is why that needs to be done. In other words, the only time she made. But here, Your Honor, they did have that warning. In other words, the only waiver that we are seeking to apply is not one that was in place at the time the statements was made. Rather, it is a conditional waiver that the defendant agreed to, agreeing that that waiver would not take place immediately, but rather would take place only if the defendant breached. Okay. So going back to my question, I mean, we have both a timing issue and then a legal issue here which we'll have to sort out. But if the defendants know that by signing a plea agreement that if they pull out of the plea, all bets are off in terms of statements, why wouldn't the government in every event try just for the proffer agreement, which you wouldn't have the whole thing about all the details that go into execution of a plea agreement and all the formalities and all the issues, why wouldn't you always have that or incorporate it within the plea agreement? Why wouldn't you do that? Because there are differences in negotiation in different cases. The bargaining power of the parties in different cases is different. Sure. And in this case, the waiver and breach, the waiver, the conditional waiver conditioned on the breach and for her factual basis in the plea agreement was a negotiated part of the entire plea agreement. In other cases, we might take a different approach. In other cases, we might have a proffer agreement with only a limited waiver, not the full waiver we have here. In other cases, we might have nothing at all. That's something that goes to that. Maybe it's just a question of drafting. That's, I think, the policy argument as well, which is to recognize the ability to do what was done here. In other words, to recognize the ability of the parties to negotiate this and arrive at the agreement that can have different terms depending upon the different case and the different bargaining powers, in fact, is precisely what Mezzanotto recognizes as a proper goal of public policy. Your position is that even if we disagreed that this agreement did that, that as a matter of policy and principle, you'd like to be able to know that an agreement can do that? Yes. If Your Honor's problem is only with the drafting of this particular agreement, obviously the drafting can be corrected in the future to make it more clear. Now, I disagree that this is unclear, but you may disagree with me, and that's fine. But the important legal point would be to override the argument that the defense is making, which is how it's drafted doesn't matter. That you could never do it. You could never do it because until the defendant appears and enters their plea and it's accepted by the court, there's nothing in a plea agreement that can be enforceable. That seems like an appropriate time to hear from the defense unless there's another question.  May it please the Court.  I'm Michael Camuñas, representing Defendant Appley. I'm here with my colleague, Angela Mahala, who's with me on the briefs below. Your Honors, before I get into the legal principles at issue here, I want to address a couple of factual points that aren't part of the concerns you raised earlier, but that go precisely to what some of the admissions the government has made here. First and foremost, Your Honor, as I believe Judge McEwen, you mentioned paragraph 22 specifically in this case. There's an inherent ambiguity in when the breach provision in paragraph 22 begins. And the government, as I just understood him, just admitted and acknowledged that there's an ambiguity and it could be drafted better. No, in fairness, what I heard him say is if the court took that position, that that would lead to potentially different drafting in the future, but that it might not mean that all such waivers or all bets are off. So that's what I heard him say. I don't think he agreed with that. But earlier, prior to that point, Your Honor, when you were pointing out the language of paragraph 22, which seems to contemplate that the breach remedies would arise after the defendant had entered her plea, I think that creates an inherent ambiguity. Is your ultimate position that even if it was written otherwise, and let's make it even – let's take my hypothetical. Suppose this agreement either is read or was clear and definitely read that the cooperation requirement goes into effect immediately, and she breaches it. She says, okay, I'm not – the next day they say, okay, come talk to us, and she says, I'm not doing it, before anything comes up about the plea. Right? So it's not the plea that's the breach. It's the refusal to cooperate that's the breach. Is your position, as the district court seemed to think it was, that there just is no agreement until the plea happens? Your Honor, it's our position that in the absence of detrimental reliance by the government, there is – until the defendant has stood and the court has gone through the Rule 11 colloquy. Well, why do you need that position? I mean, why can't a plea agreement have – I mean, what makes a plea agreement special is the fact that the plea has – is inherently contingent. But nothing else about it is necessarily inherently contingent, and why is the fact that they're all in one piece of paper necessarily mean that other agreements within the plea agreement aren't enforceable? And as I say, as I read Young, that's what Young was saying. Young wasn't saying – Young is narrower, I think, than the government was arguing it for, because it was saying the reason this is enforceable is because he got a bond for it. That's correct. There was detrimental reliance by the government in that case, and it was entitled in exchange for that side agreement to enforce the statements. Let me just speak to the specific point, though, Your Honor. This Court has made clear that an agreement – a defendant is free. Either party should not be bound by his or her agreement until she enters a – the plea is accepted by the district court. Why is that necessary? Well, the agreement is a plea, but what – and I think that Hyde does implicate some of this insofar as it's broader than that. Now, I don't know that – to me, that doesn't influence whether you win or lose. No, I understand. But it influences the theory. But Hyde just stands for the proposition that the plea and the plea agreement need not be accepted at the same time, but that the defendant becomes bound at the moment she stands up and the court determines that there's a factual basis for her plea and that she knowingly and voluntarily waived a whole bundle of rights in connection with that plea. Bound in what? Bound by the plea? Bound by the agreement, the agreement to plead guilty and the other agreements that she entered into in connection with it. Well, let's say that the agreement said in one nice paragraph, if you decide – if you exercise your rights under Rule 11 and decide not to plead guilty, you are hereby advised that the government has the right to use any, you know, statements, documents, records, et cetera, et cetera, that you have made or have provided to us, period. Would that be enforceable? I don't believe so, Your Honor. You cannot – parties cannot contract around Rule 11, the requirements of Rule 11. That's a bigger problem than the government's point of view. Would you have entered into that agreement? I'm sorry? Would you have entered into that agreement? Let me make sure I understand. The client have entered into that agreement the way Judge McKeown just read it. Could you – could you explain? Well, I'm positive. I'm positive the answer is no. No, it doesn't matter with that because the government, you know, you would or you wouldn't, you enter into proper agreements. So my question is, I'm trying to understand your position as to whether you think that there's no basis for a defendant to waive Rule 11. There is no basis for the defendant to waive Rule 11 ever. Ever. And that's what makes plea agreements different than any other agreement. The government in its opening brief on appeal starts with the premise that if this agreement, this waiver were part of any other agreement, it would be enforceable. That's undisputed. And I say, sure, if we had entered a different agreement, we'd have a different agreement. In fact, we entered a plea agreement. Let me make something factually clear. The negotiations between the defendant and the government prior to the entry of that agreement at all times were expressly protected by the plea statement rules. If you look at the government's sealed excerpts of record, you'll find that all of our correspondence and negotiation back and forth were expressly reserved, the defendant's rights under Rule 410 of the Federal Rules of Evidence and Rule 11. Could you go back to your earlier statement just before you move on, and that is your position that the defendant can never waive Rule 11 rights. What is your best support for that proposition? Our support for that is our decisions of this court, Your Honor, which have held repeatedly that the question of a binding plea agreement is determined not by principles, not by contract principles, not by looking to the Uniform Commercial Code, but by looking to Rule 11 itself. This is because, as Savage holds, those agreements are implicitly, or as I think one of you said earlier, inherently conditioned on the acceptance of the plea by the court. There's authority in Partita Parra, for example. But that doesn't answer the second question. You overstated it because Mezzanotto certainly says that you can waive Rule 11. Mezzanotto says, not that you can waive. Well, Mezzanotto doesn't decide that, first of all, Your Honor. Mezzanotto says that the rules – Mezzanotto disagreed with this Court's conclusion that the particular rules at issue there, the plea statement rules, were per se unwaivable. It said that absent some overriding procedural considerations – this is the language of Mezzanotto – absent some overriding procedural considerations, we find that the rules can't be said to be per se unwaivable. Here we have precise – and it analyzes that case on the basis of the facts presented there. Here we have exactly that overriding procedural consideration. But you're saying – you're not saying that Rule 11e and 410 are not waivable. You're saying that they're not waivable in a plea agreement. They're not waivable in a plea agreement. A defendant cannot waive the right to stand up before a court and for a court to determine that there's a factual basis for the plea. That's the whole rationale from a policy perspective of having that rule. Let me just stop there. I mean, the one reason that that gives me pause is that, you know, a plea agreement, you waive a lot. You do. In an ultimate plea agreement, obviously, your right to the jury trial is the biggest thing that you waive, and usually your right to appeal as well. Correct. So those are huge things that are waived. Right. So to say that you can't waive Rule 11… But you can't waive the right. You can't waive the right of Rule 11, conferred in Rule 11b-4, which is for the government excuse me, I might have just, it's Rule 11b-3, that you can't waive the right for the government for a Rule 11 colloquy. That's because a Rule 11 colloquy is designed to protect certain fundamental constitutional interests that are at stake in a plea. I mean, this particular part of Rule 11 is not a better Rule 11. We would never get to the Rule 11 colloquy under the hypothetical. In other words, the question is, if you had an airtight paragraph that said, I waive Rule 11, and I understand if I don't plead guilty, then my statements, all bets are off. On the other hand, if I go ahead with the guilty plea, then the remainder of the agreement kicks into force. You don't think that you could make that statement? I don't believe that is an enforceable agreement, Your Honors. And let me just, for several, that's not before the Court, but for what it's worth, I do not believe that the defendant and I think the case law establishes the defendant may not waive a Rule 11 colloquy. That rule was designed expressly to protect, it arose out of instances of prior abuse where the government would enter into secret agreements with the defendant. I think I'm really missing something. This particular rule happens to be in Rule 11, but it has nothing to do with a colloquy, right? That's correct. But what's dispositive here, Your Honor, is that the defendant exercised her right under Savage to withdraw from the agreement. And when she withdrew from the agreement prior to the entry of a Rule 11 colloquy, she avoided, canceled, rescinded, used the language of your choice, the agreement ceased to exist. There is Ninth Circuit authority in this jurisdiction, Your Honor. This Court has held that when the defendant timely withdraws from her agreement, she cancels the entire agreement. The government didn't in its argument today but does in its briefs, I think, weekly address the waiver cases that we cite, Washman and others. In three cases, in Portillo, Cano, Pena, and Washman, in Cano and Pena, the Court held where there was a defective Rule 11 colloquy, it rendered the entire agreement invalid. Therefore, the defendant, focusing on the validity or enforceability of the agreement, the defendant, the waiver that the defendant entered into, the waiver of her right to appeal, was also valid. Waivers rise or fall with the agreement. Kagan. Let me see if I can understand what you're saying, because this is sort of a new argument for me. I didn't understand you were making it, and maybe you're not. But it seems to be that the Rule 11, that there is something about the Rule 11 colloquy as such that's relevant here, and that is that plea agreements of any kind are not valid unless there's a Rule 11 colloquy. That's the express holding of Savage. It's been affirmed several times by this Court, including in Alvarez-Tautemus, after Mezzanotto and after Hyde. That is, there's no question. That's the first principle at issue here. Hyde, I mean, the cleavage in Hyde seems to indicate that you need, that the Rule 11 colloquy is about the plea agreement. I mean, the plea, I'm sorry. And not necessarily the plea agreement. In other words, certainly you need it to get the plea in there. But do you need it to make the plea agreement enforceable if the plea, because what happened in Hyde was there was the plea, but the plea agreement had not been approved. And what they ultimately said was the plea is okay, even though the plea agreement was not approved. And there was a Rule 11 colloquy about the plea, and that was good enough. What they said was that the defendant actually couldn't withdraw from the agreement, from the plea, absent a fair and just reason. Even though the agreement was rejected eventually. Even though the agreement was rejected. But this, and that doesn't change the fact here. First of all, there's been no Rule 11 colloquy. That takes Hyde and all of its cases outside of the Court's purview for these purposes. This Court, in Portillo-Cano, for example, has expressly held that waivers must stand or fall with the agreement of which they are part. What the government basically wants to do, Your Honor, is carve this plea statement waiver out of the agreement as though it were some freestanding separate agreement. In fact, it has no independent validity. Mezzanotto does not stand, as the government inappropriately cites in its briefs, for the proposition that plea statement rules have independent validity. This waiver was a stick in a bundle of rights that Ms. Wu gave up. Excuse me, that the defendant gave up. And when the defendant gave up that right, when she rejected that agreement, she rejected every single waiver, every single, every agreement that it contained, every promise that it contained, including the right, for example, to a jury trial. Surely the right to a jury trial. When you started, it was sort of unclear what your position was. If the Court were to determine that without deciding this issue of whether you could waive a Rule 11 right and whether the plea can be withdrawn without jeopardizing a plea agreement, if the Court were to determine that in any event this agreement was not a waiver, are you urging the Court to go further? No, Your Honor. The reason I started where I did is what I started because in this case, if you didn't want to reach the larger issue of whether agreements are always enforceable at the time of execution or not, you could decide this case on the facts of this case because of the ambiguity which has to be construed in defendant's favor. But we think there's a larger principle at stake here, which is that until such time, in the case law, which has been repeatedly affirmed post-hide, until a defendant, until the Court accepts a defendant's plea, she is not bound by the agreement. And the rejection of the agreement terminates the entire agreement, not just those aspects that pertain to the plea. That's why in the line of cases from Portillo-Cano through Washington. We don't need that here because the only breach they're claiming is the failure to plead. So if there were some other agreement that was independent, they're not relying on it. But they're relying on the enforceability of an aspect of an agreement which they claim survives the defendant's rejection of it. And our position is that when the defendant withdrew from the agreement, she rejected the entire thing. The waiver cases that we cite stand for the proposition following the decision, just as an example of United States v. Martin and the Seventh Circuit. A plea agreement is a unified document, and even if it wanted to, a court may not accept in part and reject in part. The whole agreement stands or the whole agreement falls. She's rejected it, and she's not bound by any of the promises she made therein. She gave up several rights in exchange for several benefits. But under the jurisprudence of this court, which survives post-hide, when she timely withdrew from that agreement, she rejected the entire thing and the entire agreement fell. What the government would have you do is find continuing validity in some provisions. It'd be as if I took the contract and ripped it up and threw it on the floor, so I walk away from it. And there's no breach there because I've rejected it. I've withdrawn from it, as I'm legally entitled to do. Now, the government would go and pick up a piece of the agreement and say, ah, but this waiver survives, and that's why we should use it against you. And that contradicts the authority of this circuit. Well, let me ask you something we haven't really focused on. We've talked about the plea agreement, but if you read back to Rule 11, Rule 11 talks about whether plea discussions are admissible or not admissible, and then it refers you to the rule of evidence, 410. If that's the case, isn't it possible for a defendant to waive a rule of evidence? It is possible, Your Honor. I think what Mezzanotto stands for is that the Federal rules are not presumptively unwaivable. Yes, a defendant may waive, in a particular case, his or her rights. But when that waiver is part of a plea agreement, that agreement is not binding. You can't read independent meaning into that term of the agreement. When the whole agreement is not binding on the defendant until he enters a plea pursuant to Rule 11. The parties cannot contract around. This Court has jurisprudence, which we cite in our briefs, which says that the defendant may waive. Rule 11-F clearly contemplates the admissibility issue as being separate from the plea issue. The admissibility in what respect, Your Honor? Well, it says the admissibility or inadmissibility of a plea, plea discussion, and any related statements is governed by the rule of evidence. That's correct. And that rule provides that those statements are not admissible. Yeah. And so my only question is, since this rule of, this is really a question of evidentiary admissibility, which is sort of what we're here on. In other words, they want to use them. You don't want them to use them. The rule specifically segregates that out. The rule does, but the agreement at issue here is one integrated agreement. We didn't enter into a separate agreement with respect to our plea statement rights. She gave up several rights. And let me just give this as an example. Among the rights she gave up, as Your Honor has pointed out, included the right to a jury trial. And that surely is not contingent upon the entry of a guilty plea. What if she withdrew from the agreement, didn't enter the guilty plea, and now they seek to enforce not the plea statement waiver, but the waiver of the jury trial, saying that now she's entitled to, now we're entitled to enforce that waiver, and she should only have a bench trial? Surely this Court would say, no, that can't be. Because she rejected the agreement in its entirety. When the entire agreement falls, just like the waiver of appeal that the court in Washburn found, the court there said among other promises he was entitled to reject was the waiver of appeal. So we reject the agreement, and that includes a rejection of all promises made therein, the right to a jury trial, the rejection of the right to waive a jury trial, excuse me, the waiver of an appeal right, the waiver of other constitutional rights. The other question. Roberts. The other question. Yes, ma'am. One somewhat, at least to me, mysterious part of the agreement is that it does contemplate one of the things, one of the promises of the government, one of the government's obligations is not to offer as evidence in its case in chief in any prosecution that may be brought against the defendant, da, da, da, and then they can use the evidence for impeachment. Now, what was that supposed to apply to? Well, Your Honor, if you begin at the introduction of that paragraph, paragraph 17, it says if the defendant complies fully with the defendant's obligations under this agreement, the government agrees not to offer in its case in chief any statements made by the defendant. But to use it, but it can use it for impeachment, right?  And what I'm trying to understand is. Well, I'm trying to understand, Your Honor, what would be the circumstances in which that would ever arise? Well, one would be, for example, if the defendant had executed the agreement, gone before the court, entered a Rule 11 colloquy, admitted her guilt, the court had determined that there was a factual basis for that guilt and that the waivers were entered knowingly and voluntarily, and therefore this agreement would take effect. Now, if the defendant subsequently moved to withdraw and the court granted that withdrawal of the guilty plea, then the defendant, pursuant to paragraph 17, would be entitled the government would be entitled to cross-examine the defendant if she took the stand. And then it could be used for impeachment. Then it could be used for impeachment. But under the breach provision, then they could use it for the case. But it wouldn't be a breach in that. It would be a breach in that instance because the Rule 11 colloquy had already occurred, she was bound by the agreement, and the terms of the agreement by their plain language would be enforceable.  And there would be a breach. This is not a breach case. It's a breach of the agreement. I know. That's what I'm trying to understand. And I'm not sure why this is relevant, except that it does, I think it may contemplate that there are some circumstances short of a breach in which the government is entitled to use some of this material. That's what I'm trying to understand. Yeah. Paragraph 17 contemplates that if the defendant were to take, were to later withdraw her guilty plea, the government would be able to use these statements for purposes of cross-examination. And that's not going to be a breach under Section 22? It might well be a breach as well once the defendant has entered a plea and a factual basis has been determined. But the other problem, I mean, maybe this is one of the problems with the drafting of this thing, because the use of it, not in their case in chief, but for impeachment purposes, is predicated on the defendant fully complying with the agreement. And if the defendant pled guilty, but then wanted to take it away and the judge said okay, then in effect, I don't think they would be complying with the agreement. Well, in that instance, the defendant would have complied and entered the plea, and you'd be in the realm of many of the cases the government cites. The Rule 11. Post-Rule 11 when this provision would come into effect. This provision, by the way, Your Honors, and I realize I'm out of time, but if I could just quickly finish, also creates another ambiguity, which goes to the second question before this Court as to why these statements should not come in substantively. The defendant never agreed, and we think as a matter of policy, that the clear language does make, in paragraph 17, makes clear that she understood that in the event that she were to later withdraw her plea, she could be cross-examined with these statements. But the language of the agreement is ambiguous, and paragraph 17 creates a further ambiguity as to whether there was any contemplation that these statements would come in substantively in the absence of her ever having entered a plea. Thank you. We're out of time, I think, but you can have a minute of rebuttal. Okay. A quick couple of points I want to make, and I want to start with what Your Honor proposed as what if the agreement in this case said, quote, I understand if I don't come forward and tender my plea, I will be waiving Rule 11 with respect to the statements that are contained in paragraph 8, the more clear provision. Absolutely, that could be enforceable. That would be a waiver of Rule 11 that would be specific, conditioned on a specific occurrence. But if Your Honor is going to find that acceptable, then what you're essentially saying is the defense position is not correct, the agreement as a whole is not rendered void, it's just a question of drafting. If that's the issue, then I would point Your Honor to other cases, both SWCC and the Eighth Circuit, which is cited in our briefs, it's a post-Young case, and Scruggs in the Fourth Circuit, both of which deal with a conditional waiver of precisely the type that is in this agreement, that is, a waiver that is conditioned on a breach occurring. This brings us back to what Your Honors were talking about with respect to paragraph 17 and 22. Paragraph 17 is a limited-use ability, which gives us the ability to use for impeachment only if, in fact, there's been compliance with all of her obligations. If she doesn't comply with that. So what would be an example of that? If she complies with all her obligations, then she pleads guilty and there is no trial. So what is this trial that's being contemplated if she complies with all her obligations? In theory, if there were other charges brought. Completely different, having nothing to do with this. Completely different evidentiary basis, but that for some reason we wanted to use these statements, in theory we could use them if she took the stand. So it's just contemplating some different case about something else. Correct. The paragraph 22 provision is what kicks in if, in fact, the defendant breaches. It is, in effect, a conditional waiver if the defendant takes an action that constitutes a breach of the agreement. And the agreement then specifically lays out what those breaches are. In that way. It doesn't lay out failing to plead guilty as one of them, by the way. It does. Paragraph 15 makes it an obligation. No, but 22, which does. No, but 22. Which on specific breaches doesn't discuss this. But 22 doesn't discuss any at all what constitutes a breach. Yes, it does. 22 just says. It does say. It says, for example, this, and it talks about it doesn't talk about the breach. Oh, it gives one example. But it only gives one example. It refers back generally to the defendant's obligations under the agreement, which are defined in paragraph 15. It's kind of a gaping hole because, I mean, the most obvious. If you're right that this could be a breach of the agreement, it's the most obvious breach of the agreement. I don't disagree, and I think that's why the agreement is, in fact, clear. Paragraph 15 clearly imposes an obligation. It's a promise by the defendant to go forward. And I think this gets back to the policy issue, which I just think is a very important one. There is an advantage to defendants being able to promise what the defendant in this case promised. What the government bargains for when it wants a plea agreement, it is a bargaining for a certainty of outcome. And to the extent defendants are allowed to make the offer in advance, look, not only am I saying I will plead guilty, but I'm saying to you I am so certain I'm making in the plea agreement against me if I don't. That is a mechanism that the defense can use to extract additional considerations from the government. And that is precisely the policy point that Mezzanotto makes. Kagan. And how does that lead in some instances to a reluctance to plead guilty? I do not, Your Honor. And I say that because the majority of our plea agreements, the majority of our plea agreements don't contain a provision that allow us to use the defendant's statements in the plea agreement, precisely because in many situations the bargaining positions of the parties are not such that that's something we want to do. It's precisely because nobody ever thought it was enforceable. Is there really any case in which this was enforced? I mean, looking at Young the way I was looking at it as being about something slightly different. Is there any case in which has enforced an agreement like this under these rules? Yes. El-Amin. The Eastern District of Virginia case El-Amin that's cited in our brief. Cited in the brief, right. El-Amin had a brief provision. I think we've got your point well in mind. It's the briefs are very good for both. And we appreciate your argument. The case of United States v. CLA is submitted. Thank you. We'll come to the last case on the calendar this morning, Abrego v. Dow Chemical. Why don't you get set up and we'll be back in two minutes. Do you want to go up?
judges: Berzon, McKeown, King